**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**ANTHONY MOORE,**
       **Petitioner,**

**v.**                                  **Civil Action No. 2:05cv244**
                                          **Criminal Action No. 2:02cr225**

**UNITED STATES OF AMERICA,**
       **Respondent.**

## ORDER AND OPINION

Currently before the court is Anthony Moore's petition to vacate, set aside or correct a sentence previously imposed, pursuant to Title 28, United States Code Section 2255. The petition is timely within the requirements of the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (1996). The petitioner argues that his guilty plea was induced and was involuntary, that he received ineffective assistance of counsel, and that his sentence was unconstitutionally enhanced based on crimes for which he was not found guilty. Because the record conclusively demonstrates that petitioner is not entitled to relief, the court declines to hold an evidentiary hearing. See R. Governing § 2255 Proceedings for U.S. Dist. Cts. 8(a). For the reasons set forth below, Moore's petition is **DENIED**.

## I. Factual Background

On December 19, 2002, a federal grand jury returned a twenty-two count indictment charging the petitioner and thirteen co-defendants with various federal drug and firearm violations, stemming from a conspiracy to distribute heroin and cocaine base. Petitioner was charged with: Count One, conspiracy to distribute and possession with intent to distribute one

kilogram or more of heroin and 50 grams or more of cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 846; and Count Fourteen, knowingly and unlawfully possessing, using, carrying, brandishing and discharging a firearm in furtherance of and in relation to a drug trafficking crime, in violation of Title 18, United States Code, Sections 924(c)(1) and (2). Count One asserted that the offense conduct of the drug distribution conspiracy occurred from "in or about 1995, the exact date to the grand jury being unknown, up to and continuing to the date of this indictment."

On February 19, 2003, petitioner entered a plea of not guilty and requested a trial before a jury. The following month, the Assistant United States Attorney (AUSA) assigned to petitioner's case sent a letter to petitioner's counsel advising that unless petitioner pled guilty by May 1, 2003, the government would file an "Information Certifying Prior Convictions" providing notice to the court that petitioner had been previously convicted of two felony drug offenses. The letter instructed that should the petitioner be found guilty after the information was filed he would be facing a mandatory sentence of life imprisonment.

On May 21, 2003, petitioner entered into a plea agreement with the government and pled guilty to Count One of the indictment. As part of the plea agreement between petitioner and the United States, the government agreed not to file the information certifying petitioner's prior convictions; furthermore, the government agreed to dismiss the remaining counts of the indictment against the petitioner. As a result of such concessions, not only did petitioner avoid the possibility of the information being filed, he avoided being sentenced on the firearms charge which would have carried with it a **mandatory consecutive sentence** of either five, seven, or ten years depending on whether the gun was carried, brandished, or discharged.

2

Prior to sentencing, a presentence investigation report (PSR) was prepared by the Probation Office of this court.  On October 22, 2003, three weeks prior to petitioner's sentencing date, defense counsel filed a motion to withdraw due to a potential conflict from a related case.  However, on November 3, 2003, this court denied such motion and on November 12, 2003 petitioner appeared for sentencing.  At sentencing petitioner raised numerous objections to the PSR including: (1) an objection to not having been given a three-point offense level reduction for acceptance of responsibility; (2) an objection to receiving a three-level enhancement for his role as manager in the conspiracy; (3) an objection to receiving a two-level enhancement for possession of a dangerous weapon; and (4) objections to nearly all of the heroin and crack cocaine attributed to petitioner in the PSR.

The court overruled the majority of petitioner's objections, and petitioner was sentenced to 360 months imprisonment.[1]  As part of his plea agreement, petitioner agreed not to appeal any sentence lawfully imposed, so long as it was within the maximum provided by statute.  Petitioner's 360 month sentence was within the statutory maximum, as 21 U.S.C. § 841(b)(1)(A) requires a "term of imprisonment which may not be less than 10 years or more than life."  Nevertheless, petitioner appealed his sentence.  Petitioner's appeal was dismissed on March 30, 2004; subsequently, the petitioner filed this motion under 28 U.S.C. § 2255.

## II.  Procedural History

On April 25, 2005, petitioner filed the instant petition to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255.  Petitioner alleges that the AUSA's letter stating that

---

[1] Petitioner's guideline range was 360 months to life, based on an offense level of 41 and a criminal history category IV.

petitioner would face a mandatory life sentence unless he pled guilty fraudulently induced the petitioner into changing his plea from not guilty to guilty.  Petitioner also alleges that he received ineffective assistance of counsel when his attorney failed to determine that petitioner did not qualify for the enhancement discussed in the AUSA's letter.  Petitioner further alleges that his punishment was unconstitutionally enhanced by sentencing factors that were not charged against him nor determined true beyond a reasonable doubt by a jury, in violation of his Sixth Amendment rights.  On May 9, 2005, this court ordered the United States to respond to petitioner's § 2255 motion.  Accordingly, on July 11, 2005, the government filed its response and on August 8, 2005, petitioner filed his reply.

Although the government alleges that petitioner's § 2255 motion was time barred, the motion was timely filed as the one year limitations period does not start until the time expires for a prisoner to petition for a writ of certiorari from the Supreme Court.  Clay v. United States, 537 U.S. 522, 525 (2003) ("For the purpose of starting the clock on § 2255's one-year limitation period, we hold, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction.").

Thus, as the petition was timely filed, the court began its in depth review of the motion and associated memoranda, and in an Order dated October 18, 2005, the court raised, sua sponte, the doctrine of procedural default with respect to petitioner's claim of prosecutorial misconduct. The Order granted petitioner thirty days to respond and demonstrate why the misconduct claim should not be dismissed.  On November 21, 2005, petitioner filed his response with the court, and therefore, the matter is now ripe for review.[2]  Because the case file, along with the court's

---

[2] Petitioner's response to the court's October 18, 2005 Order appears to exceed the scope of the response requested by the court.  For example, petitioner now argues actual innocence and

recollection of the case, are adequate to dispose of the matter, an evidentiary hearing is not required.  <u>See</u> R. Governing § 2255 Proceedings for U.S. Dist. Cts. 8(a); <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 n.4 (1977).

### III.  Standard of Review

A petitioner collaterally attacking his sentence or conviction pursuant to 28 U.S.C. § 2255 bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255.  The burden of proof applied in such a collateral attack generally requires a petitioner to prove his grounds by a preponderance of the evidence.  <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir.1958); <u>United States v. Allgood</u>, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999).  However, an elevated burden is placed on a petitioner alleging a claim in a § 2255 motion that contradicts representations made under oath.  <u>Fields v. Attorney Gen. of Maryland</u>, 956 F.2d 1290, 1299 (4th Cir. 1992).  The elevated burden requires proof by "clear and convincing evidence," otherwise, a petitioner "is bound by the representations he makes under oath during a plea colloquy."  <u>Id.</u>; <u>see also</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977) ("[R]epresentations of the defendant . . . as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.").

---

that effective assistance of counsel was not provided on appeal.  Although the court will consider such allegations in analyzing whether petitioner has presented a valid justification for his procedural default, the court will not consider such arguments as new grounds for relief.  Any new arguments presented in petitioner's response that were not raised in petitioner's original § 2255 motion are not properly before this court, but rather, constitute a second or successive § 2255 motion.  Because petitioner has not obtained permission from the Fourth Circuit Court of Appeals to file such successive motion, petitioner's new claims are not addressed in this Order.

5

A collateral attack under § 2255 is, by design, far more limited than an appeal as the "usual and customary method of correcting trial errors is by appeal." Allgood, 48 F. Supp. 2d at 558; see United States v. Frady, 456 U.S. 152, 165 (1982) ("[A] final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Because a collateral challenge is not intended to serve the same functions as an appeal, the doctrine of procedural default bars the consideration of a claim that was not raised at the appropriate time during the original proceedings or on appeal. There are three instances, however, when a claim not previously raised may be considered on collateral review. The first instance is based on the procedural default test articulated by the Supreme Court in United States v. Frady, 456 U.S. 152, 165 (1982), and requires a petitioner to show both: (1) cause; and (2) actual prejudice, resulting from the alleged error. Id. at 167; see also Wainwright v. Sykes, 433 U.S. 72, 84 (1977); United States v. Mikalajunas, 186 F.3d 490, 492-95 (4th Cir. 1999). To show "cause," the petitioner's claim "must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Mikalajunas, 186 F.3d at 493 (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). To show "actual prejudice," the petitioner must demonstrate "that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray, 477 U.S. at 494). The Frady test presents "a significantly higher hurdle than would exist on direct appeal." Frady, 456 U.S. at 166.

Alternatively, the second instance when a procedurally defaulted claim is properly considered by the court on collateral review is when a petitioner can demonstrate that he is actually innocent. Upon such a showing, the court should issue a writ of habeas corpus in order

6

to avoid a miscarriage of justice, regardless of whether the claim was procedurally defaulted. See Schlup v. Delo, 513 U.S. 298, 321 (1995).  However, the "actual innocence" exception has been limited by the Fourth Circuit Court of Appeals to apply only in capital cases or cases where the alleged error results in the application of recidivist enhancements.  Mikalajunas, 186 F.3d at 494-95.  Furthermore, the Supreme Court has called into doubt the extension of the actual innocence exception beyond capital cases.  See Dretke v. Haley, 541 U.S. 386, 392-94 (2004).[3]

In addition to the Frady test and actual innocence exceptions, a claim founded on the allegation of ineffective assistance of counsel may also be properly raised in a § 2255 motion even if such claim was not preserved at the trial level or raised on direct appeal.  United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).  This exception to the procedural default rule exists because, on appeal, both petitioner's and defense counsel's positions may not be adequately established on the record.[4]  Id. at 120 (finding that ineffective assistance is "more properly raised in a § 2255 habeas motion for collateral relief" where both the petitioner and counsel can adequately document their positions).  As a result, an ineffective assistance claim brought pursuant to § 2255 is not required to meet the Frady "cause and actual prejudice" test. DeFusco, 949 F.2d at 120-21; Massaro v. United States, 538 U.S. 500, 504 (2003).  Rather, to

---

[3] Although the Supreme Court in Dretke recognized that the "cause and prejudice standard is not a perfect safeguard," the Court also expressed "confidence that, 'for the most part, victims of fundamental miscarriage of justice will meet the cause-and-prejudice standard.'" Dretke, 541 U.S. at 394 (quoting Murray, 477 U.S. at 495-96).  The Supreme Court further defended its decision not to expand the "actual innocence" exception by noting that "the availability of ineffective assistance of counsel claims–either as a ground for cause or as a free-standing claim for relief– . . . safeguard[s] against miscarriages of justice." Id.

[4] A petitioner's procedural default may be disregarded in appropriate circumstances as the rule is neither a constitutional nor statutory requirement, but rather is a judicial doctrine applied in order to respect the finality of judgments and to conserve judicial resources.  Massaro v. United States, 538 U.S. 500, 504 (2003).

succeed on collateral review, ineffective assistance claims are required to meet the two part test established in Strickland v. Washington, 466 U.S. 668, 686 (1984).  The Strickland test requires a petitioner to prove both: (1) that his attorney's conduct fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance caused him prejudice. Strickland, 466 U.S. at 687-91.

Considering whether an attorney's conduct fell below an objective standard of reasonableness, the court should be "highly deferential" to counsel's strategic decisions made during the course of representation.  Under the standard established in Strickland, "there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance."  Kratsas v. United States, 102 F. Supp. 2d 320, 322 (D. Md. 2000) (citing Strickland, 466 U.S. at 688-89). Likewise, evaluating counsel's conduct in retrospect requires "every effort be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986).  A petitioner meets his burden only if he can show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.

Turning to the prejudice prong, to satisfy the Strickland test a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  The Supreme Court has defined reasonable probability as "a probability sufficient to undermine confidence in the outcome."  Id. Most importantly, the burden of proof lies with the petitioner and petitioner's conclusory

statements will not suffice to overcome such burden.  United States v. Turcotte, 405 F.3d 515,

537 (7th Cir. 2005) ("[U]nsubstantiated and largely conclusory statements fall far short of

carrying [petitioner's] burden of persuasion as to the two elements of the test outlined in

Strickland."); see United States v. Allgood, 48 F. Supp. 2d 554, 559 (E.D. Va. 1999).

## IV.  Analysis

In the instant case, petitioner has not alleged that he is actually innocent of conspiracy to

distribute controlled substances; rather, he alleges that his involvement in the conspiracy was

more limited than the role attributed to him at sentencing.[5]  As a result, for petitioner to succeed

on his prosecutorial misconduct claim he must demonstrate both cause and actual prejudice

under the Frady test discussed above.  As to petitioner's claim for ineffective assistance, such

claim can only succeed if petitioner establishes both deficient representation and prejudice

sufficient to meet the requirements of the Strickland test.  Finally, in order to succeed on his

claim of unconstitutional sentence enhancements, petitioner must establish that the Supreme

Court's holding in United States v. Booker, 125 S.Ct. 738 (2005), applies retroactively.  Because

petitioner fails to carry his burden to establish any of these claims, petitioner's motion is denied.

### A. Involuntary Plea – Prosecutorial Inducement

Petitioner argues that his guilty plea was involuntary because the government fraudulently

---

[5]  Even if petitioner did allege that he was actually innocent, because this is a non-capital matter and no recidivist statute was applied to petitioner, he would still be required to demonstrate both cause and prejudice.  Although this matter involves petitioner's allegation that the AUSA attempted to induce a guilty plea by wrongfully claiming that petitioner qualified for a statutory sentence enhancement based on prior convictions, petitioner was not sentenced under such enhancement.  Therefore, even if petitioner was "innocent" with respect to the "prior convictions," petitioner must show cause and prejudice because his sentence was not increased based on the recidivist enhancement.

induced him to plead guilty based on misrepresentations about petitioner's "prior" felony drug convictions.  The court finds that petitioner is not entitled to relief on this ground.

Preliminarily, guilty pleas are not normally subject to collateral attack.  However, the voluntariness and intelligence of a guilty plea can be collaterally challenged.  Bousley v. United States, 523 U.S. 614, 621 (1998).  Even a challenge to the voluntariness of a plea, however, can only be collaterally attacked if it was first challenged at the appropriate time at the trial level or on appeal.  Reid v. True, 349 F.3d 788, 806 (4th Cir. 2003).  A petitioner who fails to raise claims at the appropriate time during the original proceedings or on appeal is in procedural default, and therefore, must either meet the Frady "cause and actual prejudice" test, or establish actual innocence.  Bousley, 523 U.S. at 622; Frady, 456 U.S. at 165-67.[6]

### 1. Procedural Default

Here, the record indicates that petitioner appealed his sentence after first waiving his right to appeal and that petitioner's appeal was dismissed by Fourth Circuit as a result of such waiver.  However, the record, including petitioner's memorandum in support of his § 2255 motion and his reply memorandum, does not indicate that petitioner challenged the voluntariness of his plea at anytime prior to filing his § 2255 motion, including during the Rule 11 plea colloquy or at his sentencing.  Therefore, the court presented petitioner the opportunity to justify the apparent  procedural default by demonstrating "cause and actual prejudice."   Although petitioner filed a detailed response to the court's October 18, 2005 Order, the court finds that petitioner failed to establish cause and prejudice sufficient to excuse his procedural default.

The existence of "cause" for a procedurally defaulted claim must turn on something

---

[6] As discussed in the previous footnote, actual innocence does not apply here.

external to the defense, "such as the novelty of the claim or a denial of effective assistance of counsel." Mikalajunas, 186 F.3d at 493 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  To show "actual prejudice," the petitioner must demonstrate "that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray, 477 U.S. at 494).  Although petitioner alleges in his response to this court's recent Order both that he was denied effective assistance on appeal and that he was in transit between prisons and had no opportunity to work with his attorney on his appeal, such claims, even if true, only establish cause.  The petitioner fails to meet the required standard for prejudice in that he merely alleges that the prosecution made an error which created the "possibility of prejudice."

Petitioner was possibly prejudiced as he allegedly decided not to go to trial based on the representations in the AUSA's letter.   However, by not going to trial petitioner entirely avoided the very real possibility of receiving a mandatory minimum ten year consecutive sentence on Count 14, the gun charge that he avoided by pleading guilty.  Furthermore, petitioner had the opportunity at his sentencing to call witnesses and present evidence in order to establish his role in the conspiracy and petitioner took full advantage of such opportunity.  Thus, even if the government was mistaken as to whether the petitioner's criminal history qualified him to receive an enhancement, because such enhancement was not applied to the petitioner, there is no "actual and substantial disadvantage" and therefore, no "prejudice."  Petitioner has not overcome the doctrine of procedural default and therefore, his claim must be dismissed.

## 2. Merits of Petitioner's Claim

Furthermore, even if petitioner had overcome the barriers posed by his procedural default,

the court would find that his claim is without merit.  Petitioner has presented no evidence

establishing that he failed to understand the nature of the plea agreement that he freely entered

into.  As part of a detailed colloquy by the court, petitioner acknowledged that his plea was not

coerced or induced in any manner, and that he was pleading guilty to the conspiracy because he

was in fact guilty of the offense.  Specifically, the court asked and petitioner responded:

> Court: Has anyone threatened you in any way or used force against you to induce
> you to plead guilty?
> Moore: No, Sir.
> . . .
> Court: Are you entering this <u>plea agreement</u> freely and voluntarily?
> Moore: Yes, Sir.
> . . .
> Court: Are you entering this <u>plea of guilty</u> freely and voluntarily?
> Moore: Yes, Sir.
> . . .
> Court: And are you pleading guilty because you are in fact guilty of the offense
> with which you are charged?
> Moore: Yes, Sir.

Plea Transcript, p.15, 19-21 (emphasis added).  Considering the impact of these sworn

statements, "solemn declarations in open court affirming a plea agreement . . . 'carry a strong

presumption of verity.'"  <u>United States v. Lemaster</u>, 403 F.3d 216, 221 (4th Cir. 2005) (quoting

<u>United States v. White</u>, 366 F.3d 291, 296 (4th Cir 2004)).  Such presumption presents "a

formidable barrier in any subsequent collateral proceedings."  <u>White</u>, 366 F.3d at 296 (quoting

<u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)).  Furthermore, because "courts must be able to

rely on the defendant's statements made under oath during a properly conducted Rule 11 plea

colloquy," allegations in a § 2255 petition that contradict a plea colloquy are "patently frivolous

or false" except in the case of extraordinary circumstances.  <u>Lemaster</u>, 403 F.3d at 221 (citations

omitted).

Here, petitioner attempts to contradict statements made under oath in open court.  He now claims, in direct contradiction to the "solemn declarations" quoted above, that he did not freely enter into his plea agreement and that the government induced him to plead guilty.  However, petitioner did not raise such arguments until after he had been sentenced to a lengthy term of imprisonment, an outcome he obviously now wishes to avoid.  In fact, at petitioner's sentencing he stated during his allocution that:

> I thought I could provide factual evidence on my part as far as some of this drug weight went, but not for the point of denying that I – you know, the reason why I plead guilty, which that I felt I didn't just stumble, I fell and caused myself to be in a situation.  I chose to associate with the people that I associated with.

Sentencing Transcript, p.138.  Petitioner has not presented "extraordinary circumstances" sufficient to overcome the representations he made under oath at his plea colloquy.  See Lemaster, 403 F.3d at 221.  Even if the AUSA did make an error, such error had no impact on petitioner's guideline range nor an impact on petitioner's ability to argue, present evidence, or call witnesses to establish that he was minimally involved in the conspiracy.  Furthermore, as previously discussed, petitioner's plea bargain helped him to avoid the potential for a ten year mandatory minimum sentence on the gun charge that would have run consecutive to his sentence on the drug charge.  The fact that a plea bargain is "favorable" to a defendant and that accepting it was reasonable and prudent is evidence of the voluntary and intelligent nature of the plea.  Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992).  Petitioner has thus failed to demonstrate by clear and convincing evidence that his plea was not knowing and voluntary based on the prosecutor's alleged error.  See id.

## B.  Ineffective Assistance of Counsel

The Sixth Amendment provides, in relevant part, that: "In all criminal prosecutions, the

accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. This constitutional requirement has been interpreted to include the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To establish an ineffective assistance claim a petitioner must prove both: (1) that his attorney's conduct fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance caused him prejudice. Id. at 687-91.

When applying the first prong of the Strickland test "there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance." Kratsas v. United States, 102 F. Supp. 2d 320, 322 (D. Md. 2000) (citing Strickland, 466 U.S. at 688-89). Evaluating counsel's conduct in retrospect requires "every effort be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." Strickland, at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986).

When applying Strickland in the context of a guilty plea, the court must apply a modified test with respect to the prejudice prong. Slavek v. Hinkle, 359 F. Supp. 2d 473, 491 (E.D. Va. 2005). The modified prejudice element requires the petitioner to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Although the test is slightly modified, the analysis remains similar because the assessment "will depend in large part on the prediction of whether the evidence likely would have changed the outcome of a trial." Id.; see Reid v. True, 349 F.3d 788, 798 (4th Cir. 2003) (stating that the prejudice inquiry "will often turn on an assessment of the likelihood of success of a particular investigation or strategy."). In

14

making such outcome predictions, a court should apply an objective standard; thus, the fundamental inquiry is whether a "reasonable defendant, properly counseled, would not have pled guilty and would have insisted on going to trial."  Slavek, 359 F. Supp. 2d at 494; see Hill, 474 U.S. at 59.  Here, petitioner does not succeed in establishing either element of the modified Strickland test.

### 1. Attorney's Conduct

Petitioner alleges that his counsel was ineffective in that counsel allegedly agreed with the government that petitioner had two prior felony drug convictions that could be used to enhance his sentence to a mandatory term of life in prison.  The petitioner states that "the District Court determined the last substantive act [for his federal conviction] was prior to October 2000" and that "[n]either of the Movant's [state] felony drug convictions occurred until 2001."  § 2255 motion, p.14.  Therefore, petitioner contends that his attorney should have recognized, prior to the preparation of a PSR, that neither of petitioner's state drug convictions qualified as final prior convictions under 21 U.S.C. § 841(b)(1)(A).

Petitioner's argument is flawed in several respects.  First, petitioner has failed to establish that his attorney did in fact advise that petitioner's "prior convictions" qualified petitioner for an enhanced sentence.  Petitioner's counsel has filed an affidavit stating that counsel never advised petitioner that he qualified for an enhanced sentence because counsel never had specific information supporting the government's position.  Furthermore, counsel explains in his sworn statement that petitioner's decision to plead guilty was not motivated by the government's letter discussing the filing of an information; rather, several co-defendants's agreed to testify against the petitioner and based on this fact, petitioner decided to plead guilty.  Counsel's position is

15

corroborated by the fact that petitioner pled guilty three weeks after the date required by the

government to avoid the filing of an information, indicating that the AUSA's letter did not

motivate such plea.  In the face of conflicting affidavits, the court may consider petitioner's

allegations against the record of the plea hearing and against independent evidence.  See United

States v. White, 366 F.3d 291, 296 (4th Cir. 2004); see also Ellis v. Picklesimer, 135 F. Supp. 2d

717, 720 (M.D.N.C. 2000) ("While an evidentiary hearing is normally necessary to resolve issues

of credibility, such as on first blush appear in this case, the exception to that rule recognizes that

when a petitioner has made a claim which is incredible on its face or incredible in the context of

the record before the Court, then an evidentiary hearing will not be required.").  Here, petitioner

was questioned at his guilty plea about the uncertain nature of sentencing factors and warned that

his attorney could not make accurate predictions about likely sentences until a PSR was prepared;

the record states:

> Court: Do you understand that a presentence report must be prepared by the
> probation office of this court setting forth your personal history as well as
> the facts of this case?
> Moore: Yes, sir.
> Court: And do you understand that until such a presentence report is completed,
> it's impossible for either the Court or your lawyer to know precisely what
> sentence range will be prescribed by the guidelines?
> Moore: Yes, sir.
> . . .
> Court: Have you discussed the Sentencing Guidelines with Mr. Harmon?
> Moore: Yes, sir.
> . . .
> Court: Now do you understand that at this point its unlikely that he can be specific
> as to the guidelines which will apply because he may not have all of the
> necessary information, and he obviously has not seen a presentence report?
> Moore: Yes, sir.

Plea Transcript, p.17-18.  Therefore, petitioner's claim that his plea was based on erroneous

advice from his counsel directly contradicts statements made before the court under oath and

16

conflicts with the evidence presented in counsel's affidavit.  Furthermore, petitioner's claims are

"incredible on their face" as petitioner also alleges in his § 2255 motion that counsel promised

petitioner would not receive more than five years incarceration.  Counsel denies such statement

and the court notes that not only did petitioner plead guilty to a drug offense with a mandatory

minimum of ten years, the mandatory minimum was clearly stated on the first page of the plea

agreement and the following exchanges occurred at petitioner's plea colloquy:

> Court:  Have you read the plea agreement in this case?
> Moore: Yes, sir.
> Court:  Has Mr. Harmon fully explained the plea agreement to you?
> Moore: Yes, sir.
> . . .
> Court: Prior to signing the plea, did you read and understand each page?
> Moore: Yes, sir.
> . . .
> Court: The mandatory minimum penalty provided by law for this offense is
>        imprisonment for a period of not less than 10 years.  Do you understand
>        the seriousness of the penalty provided by law?
> Moore: Yes, sir.

Plea Transcript, p.5, 7.  Therefore, petitioner has not established that his attorney advised him

that his "prior convictions" qualified petitioner for an enhanced sentence or that he would only

receive five years incarceration.[7]

Second, even if the court assumed that petitioner's counsel had made a statement

indicating that petitioner qualified for an enhanced sentence, such a statement would not be

outside the "wide range of reasonably professional conduct."  Although petitioner argues that it is

plainly clear that his 2001 state convictions occurred after his involvement in the federal drug

---

[7] Petitioner was also asked under oath: "Has anyone, including your attorney . . . made any promise of leniency or promise of any kind in return for your plea of guilty other than what is contained in the written plea agreement?" and the petitioner responded, "no, sir." Plea Transcript, p.15.

17

conspiracy ended, even if true, such evidence is only clear in hindsight.  Petitioner argues that

"the District Court determined the last substantive act [for his federal conviction] was prior to

October 2000," however, such a determination would only have been made at sentencing, which

occurred months after petitioner decided to plea guilty.  See § 2255 motion, p.14.  Looking to the

information available to counsel at the time of petitioner's guilty plea, Count One of the

indictment, the count the petitioner plead guilty to, clearly states in ¶ 182, "In or about October

2002, at Portsmouth, Virginia, ANTHONY MOORE distributed crack to an unindicted co-

conspirator."  Indictment, p.29.  Thus, petitioner's criminal record would have shown two state

felony drug convictions in 2001, one resulting from petitioner's arrest in 1999 and the other from

his arrest in January of 2001, and the grand jury charged that petitioner was involved in the

federal drug conspiracy until at least October of 2002.  If the grand jury's charges proved true,

petitioner would clearly qualify for the enhancement; therefore, petitioner's counsel would not

have been outside the broad range of professional conduct if he told petitioner that he qualified

for an enhancement based on his prior felony drug convictions.[8]  To the contrary, not only would

it not have been erroneous advice to suggest that petitioner may qualify for an enhancement

based on prior convictions, it would have been good advice.[9]

---

[8]  To further illustrate this point, the PSR indicated that a portion of petitioner's offense
conduct occurred in June of 2001, after the petitioner had already been arrested for both state
drug felonies.  See PSR ¶ 51.  The information in this paragraph of the PSR was ultimately not
held against the petitioner to avoid the potential for attorney conflict; however, the decision not
to hold such activities against the petitioner was not made by the court until a hearing in
November of 2003, nearly six months after the petitioner decided to plead guilty.  Obviously,
petitioner's counsel cannot be expected to foresee such remote legal developments.

[9]  Petitioner also alleges that his prior convictions were stipulated to as acts in furtherance
of the conspiracy and/or relevant conduct.  However, the PSR indicates that although the 1999
state felony was considered "relevant conduct," the 2001 offense was not.  See P.S.R. Worksheet
C.  Thus, even if petitioner is correct that both prior state felonies were eventually considered

18

Therefore, as the Strickland test requires "every effort be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time," the court concludes that petitioner has not established deficient performance.  Strickland, 466 U.S. at 689.  Petitioner has not established that counsel provided erroneous advice, and even if he did, such advice did not rise to the level necessary to consider counsel's conduct as falling outside of the "wide range of reasonably professional conduct."  Thus, considering such evidence as it existed at the time of petitioner's guilty plea, the court simply cannot find the petitioner's counsel's conduct to be deficient.

### 2. Prejudice[10]

Petitioner has failed to establish prejudice because even perfect legal advice at the time of petitioner's guilty plea would have suggested that although it may be unclear as to whether petitioner's state convictions were in fact "prior convictions" under the federal statute, the possibility for such designation certainly existed.  The indictment suggested that petitioner's criminal involvement in the federal conspiracy extended until at least October 2002, and both state convictions were "final" in 2001; the AUSA was certainly well within his rights to at least attempt to file a criminal information certifying such convictions and petitioner appears to have faced the very real prospect that at least one state conviction would have been properly certified.  Furthermore, if the petitioner pled not guilty he would have faced up to a ten year consecutive

---

relevant conduct, this shows that the interplay between the federal and state charges was anything but clear prior to sentencing, and certainly not clear at the time of petitioner's guilty plea.  Thus, petitioner's attorney was not rendering ineffective assistance even if he indicated that petitioner should take the plea based on the potential of the government filing an information.

[10] The court presents limited analysis on the prejudice prong of the Strickland test as the deficient conduct prong was clearly not established.

19

mandatory minimum sentence on the firearms charge.  These two factors, considered along with evidence that several co-conspirator's agreed to testify against petitioner, lead the court to conclude that petitioner would not have persisted in his not guilty plea even with "perfect" legal advice and therefore, petitioner was not prejudiced.  See Hill v. Lockhart, 474 U.S. 52, 59 (1985) (stating that the "prejudice inquiry" turns on "the likelihood that discovery of the [error] would have led counsel to change his recommendation as to the plea."); Slavek v. Hinkle, 359 F. Supp. 2d 473, 494 (E.D. Va. 2005) (asking whether a "reasonable defendant, properly counseled, would not have pled guilty and would have insisted on going to trial").  Here, as counsel states under oath that several co-defendants agreed to testify against petitioner and pleading guilty would not only avoid the potential for an information but avoid a mandatory minimum consecutive sentence of up to ten years on the gun charge, the court does not find that a "reasonable defendant properly counseled" would have insisted on going to trial.

### C. Unconstitutional Sentence Enhancement

Petitioner next claims that his sentence was unconstitutional because it was enhanced by sentencing factors that were not found by a jury beyond a reasonable doubt.  Petitioner relies on the Supreme Court's decisions in Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 125 S.Ct. 738 (2005) for this proposition.  However, petitioner's claim fails as petitioner's sentence was final prior to the Supreme Court's ruling in Booker.

In Blakely, the Supreme Court extended its ruling from Apprendi v. New Jersey, 530 U.S. 466 (2000), which held that a judge may not increase a sentence above the statutory maximum unless that sentence is based on the factual findings of the jury or the admissions of the defendant.  Apprendi, 530 U.S. at 483-84.  The Court in Blakely reasoned that, for the purposes

of Apprendi, the statutory maximum is not the maximum possible sentence for a crime, but rather the maximum sentence that could be imposed based on the factors that were determined beyond a reasonable doubt by a jury or admitted by the defendant.  Blakely, 542 U.S. at 303-04. The Court's ruling in Blakely, however, addressed the sentencing guidelines used by the state of Washington, and specifically declined to address whether the holding impacted the application of the federal sentencing guidelines.  Id. at 305 n.9.

   Subsequently, in Booker, the Supreme Court applied the holding of Blakely to the federal sentencing guidelines, determining that the mandatory nature of the guidelines violated the Sixth Amendment for the reasons stated in Blakely.  However, rather than invalidating the guidelines, the Court altered their application, making the guidelines advisory premised on the belief that Congress would have preferred an advisory guideline scheme to none at all.  Booker, 125 S.Ct. at 756, 764.  Thus, it is the Court's decision in Booker, as opposed to Blakely, that is applicable to petitioner's sentence under the federal sentencing guidelines.

Because petitioner's sentence became final prior to Booker, this court must determine if the rule announced in Booker applies retroactively to petitioner.[11]  Retroactivity comes into play when "a criminal defendant has been found guilty and [his] conviction has become final prior to announcement of the new rule."  Lilly v. United States, 342 F. Supp. 2d 532, 535 (W.D. Va. 2004).  Because the rule established in Booker qualifies as a "new rule" of criminal procedure rather than a new substantive rule, it should be applied retroactively only if it falls into the "small

---

[11] A conviction is final if "the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition of certiorari ha[s] elapsed."  Teague v. Lane, 489 U.S. 288, 295 (1989) (quoting Allen v. Hardy, 478 U.S. 255, 258 n.1 (1986)).  Petitioner's appeal was dismissed on March 30, 2004; therefore, the time for filing a petition of certiorari elapsed well before Booker was decided in January of 2005.

set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of

the criminal proceeding." <u>United States v. Morris</u>, 429 F.3d 65, 70-71 (4th Cir. 2005); <u>see</u>

<u>Schriro v. Summerlin</u>, 542 U.S. 348, 351-53 (2004); <u>Teague v. Lane</u>, 489 U.S. 288, 311 (1989).

The Fourth Circuit recently held that <u>Booker</u> did not announce such a watershed change, stating:

> [W]e conclude in any event that the <u>Booker</u> rule is not a watershed rule.  As we
> have noted, the practical net result of <u>Booker</u> is minimal. . . . '<u>Booker</u> does not in
> the end move any decision from judge to jury, or change the burden of persuasion.
> . . . As a practical matter, then, petitioners' sentences would be determined in the
> same way if they were sentenced today; the only change would be the degree of
> flexibility judges would enjoy in applying the guideline system.  That is not a
> 'watershed' change that fundamentally improves the accuracy of the criminal
> process.'

<u>Morris</u>, 429 F.3d at 72 (quoting <u>McReynolds v. United States</u>, 397 F.3d 479, 481 (7th Cir.

2005)).  This determination is in accord with numerous other federal circuits that have addressed

the issue of <u>Booker</u>'s retroactivity.  <u>See</u>, <u>e.g.</u>, <u>Lloyd v. United States</u>, 407 F.3d 608, 614 (3d Cir.

2005); <u>Humphress v. United States</u>, 398 F.3d 855, 863 (6th Cir. 2005).  Therefore, because

petitioner's sentence became final prior to <u>Booker</u> and the new rule in <u>Booker</u> does not apply

retroactively, petitioner's claim based on unconstitutional sentence enhancements fails.


**V.      Conclusion**

For the reasons discussed above, the petition is **DENIED** and **DISMISSED**.  Finding no

substantial issue for appeal concerning the denial of a constitutional right affecting the

conviction, nor a debatable procedural ruling, a certificate of appealability is **DENIED**.

The Clerk is **REQUESTED** to send a copy of this Order to the petitioner and to the

United States Attorney, Eastern District of Virginia, World Trade Center, Suite 1800, 101 West

Main Street, Norfolk, Virginia 23510.

The petitioner is **ADVISED** that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received by the Clerk within sixty (60) days from the date of this Order.

It is so **ORDERED**.

                                             /s/

                                   Jerome B. Friedman
                         UNITED STATES DISTRICT JUDGE

January  20  , 2006
Norfolk, Virginia